Metropolitan Life Insurance Company, Appellee, v. Ralph A. Schwarz, et al., Appellants.

Ralph A. Schwarz, et al., Appellants, v. Warner G. Baird, Receiver, and Metropolitan Life Insurance Company, Appellees.

Appeal of Ralph A. Schwarz, et al., Appellants.

Gen. No. 41,581.

BURKE, J., dissenting.

Opinion filed April 23, 1941.
Rehearing denied May 15, 1941.

THANE S. COOLEY, of Chicago, for appellants.

FOLLANSBEE, SHOREY & SCHUPP, of Chicago, for appellees; ELSDON C. SMITH, of Chicago, and MITCHELL D. FOLLANSBEE and CLYDE E. SHOREY, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

The appellees herein state that defendants'. preliminary statement of the form of action and judgment rendered, the nature of the pleadings and theory of the defendants are, in the main, accurate, but that the theory of the plaintiff is not clearly given. Consequently, we shall avail ourselves, in so far as they have agreed, of the following statement of facts.

Plaintiff, Metropolitan Life Insurance Company, filed its complaint on April 19, 1939, praying for the foreclosure of a mortgage executed by the defendants in 1930. The mortgage in question was in the principal

amount of $100,000 and was secured by a trust deed conveying real estate improved with a 34 apartment building. A receiver was appointed who proceeded to collect the rents until February 5, 1940. At that time, the net rents in his hands amounted to $5,901.86.

During the pendency of the foreclosure proceeding, negotiations were conducted between counsel for each side for the purpose of settling the case. As a result of these negotiations, a written settlement agreement, dated February 5, 1940, was executed and under that agreement the plaintiff accepted a conveyance of the real estate in full satisfaction of the mortgage indebtedness. No foreclosure decree was ever entered in this proceeding.

After the settlement agreement between the plaintiff and the defendants was executed and fully consummated, the question for the first time arose as to the disposition of the rents in the receiver's hands. The receiver filed his final account and report showing the net amount of rents on hand, viz: $5,901.86, on March 19, 1940. On the same day, defendants, by their attorney, filed their petition pleading a discharge of the mortgage indebtedness as evidenced by the settlement agreement, and praying that an order be entered on the receiver directing him to turn over the net rents to them.

In opposition to defendants' petition, the plaintiff filed its answer and cross petition and likewise claimed the rents in question.

At the hearing before the trial court, the defendants introduced in evidence the written settlement agreement and then rested their case. The plaintiff introduced evidence attempting to show an understanding between its attorney and the former attorney for the defendants, to the effect that the receivership rents were to go to the plaintiff. All of this evidence was objected to on the ground that it was parol in char-

acter and sought to vary the express terms of the written settlement agreement.

We are setting forth plaintiff's theory *haec verba*:

Plaintiff contends that, upon default in payment under the note and trust deed, it is by law entitled to the rents and profits, where, as here, the trust deed pledged and assigned the rents, issues and profits; that this right was further confirmed by the management agreement given to its agent, the Great Lakes Mortgage Corporation; that the settlement was made with the matter clearly understood by both parties that the Metropolitan Life Insurance Company, plaintiff, was to receive the net rents in the hands of the receiver, and that when the deed was received in full discharge of the mortgage indebtedness it was to be taken as discharging the balance of the indebtedness after that part, represented by the net rents, had been applied to the indebtedness. In the trial court plaintiff, to make the matter clear, also asked for a reformation of the contract, but as the decision was given in favor of the plaintiff, a decree for reformation was not entered.

Defendants' theory is set forth as follows:

(1) That plaintiff's written acceptance of a conveyance of the real estate in full discharge of the mortgage indebtedness, resulted in a release of plaintiff's lien against the rents collected by the receiver.

(2) That plaintiff's voluntary satisfaction of the indebtedness made the entry of both a foreclosure decree and a deficiency decree impossible. Since the defendants' obligation was satisfied in full, plaintiff could have no claim to the rents in the receiver's hands.

(3) That apart from the written settlement agreement, there exists in the record no evidence whatsoever which establishes any additional understanding, either oral or written, as to the disposition of the rents in the receiver's hands.

(4)   That "inadvertence" on the part of the plaintiff (who prepared the settlement agreement) in failing to insert a provision governing rents in the receiver's hands, will not warrant the court in making a new contract for the parties.

(5)   That there exists no "custom" as urged by the plaintiff, to the effect that rents in a receiver's hands are always given to the mortgagee.

(6)   That the management agreements between the defendants and their agent, the Great Lakes Mortgage Corporation, have nothing to do with rents collected by the receiver in the foreclosure proceeding.

(7)   That the facts in this case establish that defendants, as the owners of the equity of redemption, are equitably entitled to the rents.

It appears from the evidence in this case that this foreclosure suit was never concluded; that while it was pending in court the parties got together and entered into a written agreement which on its face shows that the case was settled. Under that agreement the owners of the equity of redemption agreed to convey their equity in full payment and satisfaction of the mortgage indebtedness, and the plaintiff accepted such conveyance in discharge of the debt.   On that subject the contract reads as follows:

"Now, THEREFORE, said party of the first part (plaintiff) *has agreed to accept and does accept said conveyance in full payment, satisfaction and discharge of said mortgage indebtedness and all unpaid interest thereon,* and it is agreed by and between the parties hereto in consideration of said conveyance, that all of said mortgage indebtedness and interest thereon secured by said trust deed has been and is hereby cancelled, satisfied and extinguished, . . . "

Where a receiver is appointed to collect rents in the foreclosure of a mortgage, there is no way of knowing until after the sale whether the rents so collected, upon which the mortgagee has a lien for the payment of any

deficiency, will be needed. Without a deficiency, there is nothing upon which the rents could be applied.

In *Davis v. Dale,* 150 Ill. 239, and *Talcott v. Peterson,* 63 Ill. App. 421, the real estate was bid off for the full amount of the decreed indebtedness. Obviously, no deficiency could result. In those cases the rents were held to belong to the mortgagor. In the instant case the debt of the defendants was fully satisfied under the settlement agreement, a conveyance of the real estate having been accepted by the plaintiff and a full discharge thereof. The conveyance had the same effect as a foreclosure sale for the full amount of the indebtedness.

In *Corcoran v. Witz,* 252 Ill. App. 473, rents were collected and the suit was ultimately dismissed without the entry of any decree. The court in awarding the rents to the mortgagor, at page 475, said: "The owner of the mortgaged premises was entitled to the rents unless, upon a bill filed on account of some default, a receiver was appointed who might collect and hold the rents and pay them to complainants in case there was a deficiency; but in case there were no deficiency, the rents belong to the owners of the equity. *Davis v. Dale,* 150 Ill. 239." *Levin v. Goldberg,* 255 Ill. App. 62.

*West Frankfort Building & Loan Association v. Dorris,* 260 Ill. App. 21, was a case wherein a decree of strict foreclosure was entered and plaintiff accepted a conveyance in full payment of the debt. The court in that case said at page 28: "The complainant . . . by accepting the property in full payment of the mortgage debt, interest and costs, is now estopped from any claim or title to the funds in the hands of the receiver."

In the instant case the trial court in the order appealed from, makes a finding concerning which the appellee does not complain, but which on its face reads as follows: " ' . . . and the Court having read

said report finds therefrom and from the file and records herein that the Metropolitan Life Insurance Company accepted title to the premises in lieu of the completion of the foreclosure and in cancellation of the mortgage indebtedness, on February 5, 1940. . . . ' '' This finding by the trial court exactly conforms to the terms of the written settlement between the parties. The court does not find in its order other than that the agreement was the entire consideration for the conveyance of the appellant to the appellee of the premises in settlement of the debt. It cannot be contended that if there had been a sale and a conclusion of the foreclosure and if the property had been sold by the master for enough to pay the indebtedness, that in addition thereto the plaintiff should be entitled to the rents which had been collected and were in the hands of the receiver. Rents are merely additional security upon which the plaintiff would have a lien, and such rents are held by the court to be used to satisfy the debt in case there is a deficiency. Such was the prayer in the complaint to foreclose. In this case, no decree having been entered, the debt having been satisfied by an agreement in writing, no lien existed against the rents, therefore, we do not think it would be legal or equitable to give to plaintiff the rents which had accumulated in payment of a deficit which does not exist.

In *Citizens State Bank v. Goebel,* 292 Ill. App. 95, the court had under consideration rents which had been collected by a receiver prior to the entry of a decree, and at page 102 the court said:

"The foreclosure decree could not adjudicate the right to the money in question, because the court could not determine who was entitled thereto until after the sale. (*First Nat. Bank v. Illinois Steel Co.,* 174 Ill. 140, 150; *Owsley v. Neeves,* 179 Ill. App. 61, 64, 65.)"

The trust deed in this case, by its terms, precludes the idea that the plaintiff was entitled to the rents col-

lected, to be paid to it as a bonus, wherein it states: " . . . that said receiver may out of said rents pay prior or coordinate liens, the taxes, assessments, water rates and insurance . . . *and the amount of any deficiency decree.*" Furthermore, inasmuch as the plaintiff accepted the premises in full satisfaction of the mortgage indebtedness, there could be no deficiency decree entered in this case.

It is claimed by plaintiff that the contract, although it does not provide for the payment of the rents, was left out of the settlement contract through "inadvertence." There is no evidence in the record, either oral or written, on this subject and we think such contention is precluded by the following language which appears in the settlement contract:

"It is hereby mutually agreed that all promises, undertakings and agreements of any kind or character whatsoever are embodied herein." This clause in the contract, by which the parties determine and resolve that anything they had agreed to do is incorporated into the contract, is as binding upon them as is any other stipulation of the contract.

In *Sterling-Midland Coal Co. v. Great Lakes Coal & Coke Co.*, 334 Ill. 281, wherein the Supreme Court in passing upon a contract similar to this one, at page 290, said: "If a written contract purports on its face to be a complete expression of the whole agreement it is to be presumed that the parties introduced into it every material item and term, and parol evidence is not admissible to add another term to the agreement about which the contract is silent.

. . .

"In the instant case any such rights, duties or liabilities which would arise by implication of law are specifically negatived by the provisions which each contract contains, 'there are no understandings or agreements relative to this contract or its subject matter that are not fully expressed herein.' . . . The

clause of the contract just quoted not only negatives the fact that there are any contemporaneous parol understandings or agreements existing between the parties relative to the contract, but also expressly negatives the fact that there are any understandings, whether arising by implication of law or otherwise, between the parties as to the subject matter of the contract,—*i. e.,* as to the coal itself which is the subject matter of the contract. This clause of the contract is just as binding upon the parties as any other clause and the municipal and Appellate Courts had no right to disregard it.'' See also *Armstrong Paint & Varnish Works v. Continental Can Co.,* 301 Ill. 102.

An attempt was made by plaintiff in the trial court to show by parol evidence that this contract did not cover all the agreements between the parties. The court permitted evidence to be introduced tending to show that parol or extrinsic agreements, in addition to that which is set forth in the written contract. While the evidence was not of any particular value, we think such evidence would have been inadmissible and that the court should not have permitted this to have been done. It cannot be accepted, and the court has no power to make a new contract for the parties.

Evidence was introduced attempting to show that there existed a custom that in all cases the court usually gave the rents to the plaintiff. If there was such a custom, we have never heard of a court deciding a case as being governed by a certain custom which had grown out of some other case. Custom cannot be invoked to avoid a settled rule of law. *Gilbert v. McGinnis,* 114 Ill. 28; *Bissell v. Ryan,* 23 Ill. 566; *Entwhistle v. Henke,* 211 Ill. 273.

One of the allegations in the pleadings of the plaintiff, is as follows: ''It is the custom for the mortgagee to receive the net rents in the hands of the receiver.'' A witness produced by plaintiff testified that it was his invariable experience in Chicago that when settlements

of this kind are made after foreclosure proceedings are started, the plaintiff receives the net rents in the hands of the receiver. Inasmuch as the contract in this case states that it includes ''all promises, undertakings and agreements of any kind or character whatsoever are embodied herein,'' such testimony would not be of controlling value. *Turner v. Osgood Art Colortype Co.*, 223 Ill. 629; *Gilbert v. McGinnis,* 114 Ill. 28.

It further appears from the evidence that at the request of the plaintiff a contract was entered into between the defendants and the Great Lakes Mortgage Corporation, which corporation was controlled by plaintiff, as their agent to manage the property. Said Great Lakes Mortgage Corporation, charged six per cent for the collection of the rents and at the same time they hired one of the defendants to actually do the work of managing said building. Plaintiff now contends that these contracts between the defendants and the Great Lakes Mortgage Corporation should be construed as an assignment of the rents to them; also that these contracts also gave to the Great Lakes Corporation an authorization to apply the net rents in payment of the mortgage indebtedness, general taxes or special assessments. As already stated, these two contracts were adhered to for a period of approximately five years, and the collection of rents and income were applied on the principal indebtedness and other expenses of the property.

Plaintiff further contends that these so-called contracts constituted an absolute assignment of the rents to plaintiff and gave it an absolute right to such rents as distinguished from a lien. These agreements do not carry out the contention of the plaintiff. By the appointment of the receiver, the property and income therefrom was placed in the control of the court through its receiver and had the effect of nullifying the contract with the Great Lakes Mortgage Corpora-

tion. It is true the plaintiff had the right to have the rents applied against its debt when so ordered, but only in the event that such rents might be required for that purpose as evidenced by a deficiency decree and the evidence in this case shows that the rents were not required for that purpose. Once a receiver was appointed, plaintiff could no longer have an absolute right to the rents, even though it might be claimed to have such a right before the receiver was appointed. These funds could not be applied before the foreclosure decree or prior to a sale and the establishment of a deficiency.

As was said in *Owsley v. Neeves*, 179 Ill. App. 61:

"After the deficiency was established appellees [mortgagees] then for the first time were entitled to an order applying the rents to extinguish their judgment, and they were entitled to such an order by reason of the express provisions of the trust deed to which appellant's rights were subject by the express terms of the deed made to him. The foregoing principles are well established as law and equity in this state." See also *Citizens State Bank v. Goebel*, 292 Ill. App. 95.

Whilst there is no direct testimony as to the value of this property, yet the income from it would indicate a value in excess of the amount of their loan. The $900 monthly payments, or $10,800 yearly, would have been sufficient to pay the interest on the principal which had been paid down to $96,000, six per cent of which would amount to $5,760. The general taxes amounted annually to about $2,800, which would leave a surplus of approximately $2,240 per annum after having paid the taxes and the interest.

It is contended by the appellees that we should set aside the settlement which was entered into between the parties by their written contract. The mere oral statement that the contract was entered into through "inadvertence" is not sufficient. There is no allega-

tion or proof of a mutual mistake, fraud or misrepresentation. It was a voluntary settlement between two contending parties dealing at arm's length. The adjustment figure was arrived at, an agreement was entered into and incorporated, and we do not think this court in view of the record before us, should disturb the same.

We do not think there are any equities on behalf of the plaintiff which should be satisfied. Plaintiff has received the building and the indebtedness thereon has been paid down to $96,000. We believe the settlement made should be adhered to, it was openly arrived at, solemnly agreed to and partially executed, and this court would have no power to change those factors. The deed has been delivered and accepted and the plaintiff is now in possession of the real estate. We think the trial court should have entered an order in harmony with its finding as made in its decree, namely, that a settlement was made of the indebtedness by a conveyance of the real estate. Inasmuch as the parties did not choose to dispose of the property in the hands of the receiver, there is no reason why the court should give them an additional premium in this settlement. Agreements in writing, under seal, should be upheld unless for grave reasons it becomes necessary to set the same aside. We believe the money derived from this property which has not been disposed of, properly belongs to the former owner of the equity.

For the reasons herein given the order of the circuit court is reversed and the cause is remanded with directions to enter an order awarding the amount of money in the hands of the receiver to be paid to the appellants in this case.

*Order reversed and cause remanded with directions.*

HEBEL, P. J., concurs.

MR. JUSTICE BURKE dissenting: Under the facts as disclosed by the record, it is inequitable to give the

$5,901.86 in the hands of the receiver to the defendants. The chancellor was right in directing that this sum of money be turned over to the plaintiff. The evidence establishes that the defendants agreed that the plaintiff was to have the net rents in the hands of the receiver. They clearly understood this. The parties also agreed that the rents collected by the defendants should be retained by them. Attorney Austin L. Wyman, who represented defendants at that time, informed defendants that it was agreed that the net rents in the hands of the receiver were to go to the Metropolitan Life Insurance Company, plaintiff. He testified that after a stormy argument the defendants agreed, and that he was authorized to deliver the papers to the insurance company with that understanding. No objection was voiced to the fact that Mr. Wyman, the former attorney for the defendants, testified in behalf of the insurance company. The parties recognized that Mr. Wyman was not doing anything unethical in so testifying. It must be remembered that under the settlement the defendants have been allowed to keep $2,700 in rents which they collected for February, March and April, 1939, and which they wrongfully retained. It is to be observed that plaintiff sought to declare a cancellation of the settlement agreement and to proceed with the foreclosure, which offer was refused by the defendants. After the foreclosure action was filed the defendants proposed to give a deed for the sum of $2,000, which was refused; they then proposed to give a deed for $1,000, which was also refused. It is unreasonable to suppose that the plaintiff would refuse to pay $2,000 for a deed in lieu of completion of foreclosure, then refuse to pay $1,000, wait until $5,000 was in the hands of the receiver and then take a deed in lieu of completion of foreclosure and agree that the defendants were to have this $5,000 as well as the $2,700, estimated net rents for February, March and April, 1939.