### Sidney ALTERMAN
### v.
### Albert LYDICK.
### No. 11744.

United States Court of Appeals
Seventh Circuit.
Feb. 14, 1957.

Eugene L. Resnick, Brown, Fox & Blumberg, Chicago, Ill., for plaintiff. Jacob Logan Fox, Jr., James A. Blumberg, Chicago, Ill., of counsel, for appellant.

Albert M. Lydick, Evergreen Park, Ill., for appellee.

Before FINNEGAN, LINDLEY and SCHNACKENBERG, Circuit Judges.

LINDLEY, Circuit Judge.

This is an appeal from a judgment for defendant in an action wherein plaintiff

sought reimbursement, under an indemnification provision of a lease agreement, for pecuniary losses sustained. The district court, finding that the agreement was unauthorized, held that defendant was not bound by its terms.

Defendant, an Illinois resident, had been engaged in the trucking business for seventeen years. In 1949, he was operating under an arrangement whereby he leased his equipment to Safeway Truck Lines who, during its slack season, permitted defendant to obtain his own hauling contracts. In the event that there were one-way transactions, defendant personally customarily made arrangements for additional or return loads and, though there is some conflict in the testimony, it appears that the drivers who were in defendant's employment, also, on occasion, entered into similar agreements in his behalf.

On October 30, 1949, defendant directed one of his drivers, Johnson, to haul a load to Omaha, Nebraska. As no provision had been made in advance for a return shipment, defendant instructed Johnson to pick up a load for Los Angeles or San Francisco. However, contrary to this direction, after the driver had delivered his cargo in Omaha, he proceeded to Austin, Minnesota where he entered into a Motor Vehicle lease with the agent of plaintiff, whereby Johnson, acting as lessor, agreed to furnish the equipment and a driver for a one-way trip to Miami, Florida. At that time Johnson had in his possession Illinois state registration cards showing defendant was the owner of the vehicle, and the lease recited the registration data. Included in the contract was an indemnification provision that the lessor would "indemnify the lessee against * * * any loss or damage resulting from the negligence, incompetency or dishonesty" of the driver of the truck.

Four days after the journey to Florida had commenced, plaintiff became concerned about the location of the shipment, as no word had as yet been received from Johnson. Defendant, reached by telephone, informed plaintiff that he had not heard from the driver but assured plaintiff of Johnson's experience and competence saying that the load would be cared for. Subsequently, Johnson called defendant and was informed that he had no authority to enter into the agreement, as the equipment was too heavy to travel on the highways of the southern states and he was instructed to transfer his load and return to Chicago. Notwithstanding this admonition, Johnson continued on his journey, and, while traveling through Alabama, was involved in a collision with a car driven by Dr. G. R. Smith. Due to the resulting delay, Johnson did not reach his destination until January 8, 1950. Thereafter no demand for payment of carriage charges was made until June 15, 1950, when one Roos, acting for defendant, appeared at plaintiff's office and requested compensation for transporting the cargo; thereupon plaintiff gave him a check payable to defendant.

As Dr. Smith had sustained serious injuries, plaintiff's insurance company entered into settlement negotiations, in which defendant refused to participate. Ultimately, an agreement was reached whereby plaintiff paid $8000 to Dr. Smith, which he sought to recover from defendant in the present action under the indemnification clause.

For the purpose of this appeal, we adopt the finding of fact of the district court, as indeed we must unless clearly erroneous, to the effect that no actual authority was ever conferred on Johnson to enter into the agreement. Hence, it is clear that, although Johnson was the agent of defendant, he was not acting within the scope of his actual authority, either express or implied.

Nevertheless, in determining whether defendant is bound by the terms of the indemnification clause, we are faced with the further question of whether the doctrine of apparent authority is applicable. Evidently, the district court did not consider the applicability of apparent authority, which is clearly a part

of Illinois law. See Indemnity Ins. Co. of North America v. Midwest Transfer Co., 7 Cir., 184 F.2d 633; Northern Illinois Coal Corp. v. Cryder, 361 Ill. 274, 197 N.E. 750, 101 A.L.R. 1420; Faber-Musser Co. v. William E. Dee Clay Mfg. Co., 291 Ill. 240, 126 N.E. 186. As defined in Restatement, Agency, § 38, Comment (a) (1933): "An apparent agent is a person who, whether or not authorized, reasonably appears to third persons, because of the manifestations of another, to be authorized to act as agent for such other." This is to be distinguished from "implied authority" which is defined as "actual authority circumstantially proved." 2 C.J.S., Agency, § 99, p. 1227. Although an agent may exceed his actual or implied authority, there is no doubt that he may bind his principal by the commission of acts which fall within the ambit of his apparent authority. As stated in Faber-Musser Co. v. William E. Dee Clay Mfg. Co., 291 Ill. 240, 244, 126 N.E. 186: "A principal is bound equally by the authority which he actually gives his agent and by that which by his own acts he appears to give." However, as is well settled, it is necessary that there be such manifestations on the part of the principal as would lead a reasonably prudent person to believe that the agent was acting within the scope of his authority. Thus, Johnson, although admittedly without actual authority to enter into the lease, nevertheless was clothed by defendant with certain indicia of authority. He was in possession of defendant's trucking equipment, operating it with authority. He carried registration cards showing that the truck was owned by defendant. It was the custom of the trucking industry to check these items before entering into a leasing agreement. Drivers in the past had entered into agreements for defendant in situations, where, as here, no return trip had been scheduled.

We do not hold that each element enumerated is of itself necessarily sufficient to clothe the agent with apparent authority. However, when considered as a composite picture, the circumstances of this case constitute events and actions reasonably leading an ordinarily prudent third person to believe that the responsible party to the transaction was defendant. Consequently, even though defendant may have expressly limited the scope of his agent's actual authority, he is not relieved from responsibility arising from the transaction herein involved.

■ ■ We conclude also that defendant's conduct, in assuring plaintiff that the load was in competent hands, as well as his acceptance of payment of charges for the carriage, constituted a ratification of the agent's acts and an adoption of the agreement by defendant. Thus, as stated in Vetesnik v. Magull, 347 Ill. 611, 617, 180 N.E. 390, 392; "It is an established rule of agency that a subsequent ratification of the act of the agent is equivalent to an original authorization." We agree with the district court that at the time of the above occurrences, defendant did not in fact know of the specific terms of the lease. However, we do not believe that fact in itself is determinative of the issue. Clearly, defendant did not in any manner attempt to inform plaintiff that Johnson was deviating from his instructions. Further, defendant accepted the benefits of the arrangement by demanding and receiving payment. We conclude that, under the circumstances presented, a duty was imposed on defendant to ascertain the full nature and extent of his obligations under the leasing agreement. As is clearly pointed out in Mechem on Agency, 2d Ed., Vol. 1, p. 296: "the principal cannot be justified in willfully closing his eyes to knowledge. He cannot remain ignorant where he can do so only through intentional obtuseness. He cannot refuse to follow leads, where his failure to do so can only be explained upon the theory that he preferred not to know what an investigation would have disclosed. * * In such a case he will either be charged with knowledge, or with a voluntary ratification with all the knowledge which he cared to have."

For the reasons stated, defendant is bound by the terms of the lease including the indemnification clause contained therein. The judgment is reversed for further proceeding consistent with this opinion.