WILLIAM  KALMAN  *et al.*,  Plaintiffs-Appellees,  *v.*  RINO  BERTACCHI  *et al.*,
Defendants-Appellants.

First District (3rd Division)   No. 77-451

Opinion filed February 8, 1978.

Robert J. Anderson, of Chicago, for appellants.

Myron M. Cherry and Peter A. Flynn, of Chicago, for appellees.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

This appeal arises from a judgment entered pursuant to a settlement apparently reached by the parties but subsequently repudiated by one of the defendants, Rino Bertacchi. The underlying litigation began in 1973 when the plaintiffs, William and Joyce Kalman, sought to compel specific performance of a real estate sales contract entered into by all the defendants and to require Rino Bertacchi to complete construction of a single-family residence in Deerfield, Illinois. In addition to an answer, Rino Bertacchi filed a counterclaim seeking both compensatory and punitive damages for the alleged defamation of his business reputation. A supplemental counterclaim sought to have the court declare a forfeiture or a rescission of the real estate contract. Following 33 days of trial from May to October 1976, the plaintiffs and one of the defendants, Rino Bertacchi, entered into a settlement agreement, which Rino disavowed approximately 30 minutes after it was recorded by a court reporter. This appeal is taken from the judgment order entered pursuant to the settlement dismissing the complaint, counterclaim, and supplemental counterclaim with prejudice, and from a subsequent order denying the defendants' motion to vacate that judgment. No issues are raised on the pleadings, nor concerning any other aspects of the litigation which preceded the settlement. The defendants contend that the oral agreement should not be binding when one of the parties enters into such agreement under a misapprehension of a material fact and subsequently disavows it; that the agreement should be set aside since it is manifestly unfair and inequitable and the plaintiffs will not be prejudiced by such an action; that the settlement is not binding on the other defendants, Mary and Louis

Bertacchi who were not present and did not participate or authorize their attorney to settle; and that the agreement is unenforceable under the Statute of Frauds.

The title to the subject property is held by Oak Park Trust and Savings Bank as trustee; 50% of the beneficial interest is owned by Rino Bertacchi; the remaining 50% is owned jointly by Mary and Louis Bertacchi. Power of direction over trust assets is held jointly by Rinto and Louis Bertacchi. The contract between the defendants and the Kalmans basically provided for the sale of the real estate and construction of a single-family residence for $79,000 plus subsequently approved "extras." The Kalmans later agreed to pay $5,500 for extras. Since this appeal is concerned solely with the validity of the settlement, further detailed discussion of events leading up to that event is unnecessary.

Prior to the beginning of the trial itself in May 1976, the case had been pending for more than three years. From May to October 7, the case was actually on trial 33 days, during which time there were several settlement conferences between the parties, their attorneys, and the court. At no time, however, did defendants Mary and Louis Bertacchi come to court, attend the trial or participate in any settlement discussions. On October 7, 1976, the trial judge suggested another possible settlement for the parties to consider. The settlement proposed that Rino Bertacchi finish the partially completed structure to his own specifications and that it be sold to the highest bidder, with the proceeds to be divided between the parties according to a formula devised by the court. Following discussions between the parties, their counsel, and the court, the attorney for the defendants advised the court that the proposed settlement was acceptable. The plaintiffs asked to be allowed to think about the matter overnight.

The next morning, October 8, 1976, plaintiffs' counsel requested a conference in chambers, during which he advised the court that his clients wanted the house and the property, and would be willing to pay a total of $52,000 for a conveyance of the property and the partially completed structure. Defendants' attorney rejected the counterproposal on the grounds that it provided insufficient compensation, demanding $72,490. According to notes kept by the court, the attorney for the plaintiffs then offered to pay $59,000. This would consist of a payment of $39,000 in cash, plus a $20,000 deposit held by the defendants. That deposit had been earning interest for over three years which would be retained by the defendants, bringing the actual total to approximately $67,000. None of the parties was present during these discussions. It was then agreed that before resolving the question of money, the question of the subcontractors completing certain work should be settled. At this point, one of the plaintiffs, William Kalman, and defendant, Rino Bertacchi,

were asked to join the discussion in chambers. Following negotiations, agreement was reached regarding what work would be completed by Bertacchi or his subcontractors and what would be the Kalmans' responsibility. At the conclusion of that agreement, the trial judge announced that he was going to lunch, stating that:

"Kalman is offering you [Bertacchi] $59,000. On the question of money, I have no recommendation. That's between you two men. Now if you want to discuss it in here [chambers] all right, you may stay here while I go to lunch."

The attorneys for both parties also left, leaving only Kalman and Bertacchi in chambers. When the judge returned about an hour later, he was advised that the parties had settled their differences, agreeing on the $59,000 figure. The judge later stated for the record:

"They both told me that they were very happy that they had settled their lawsuit; that it is too bad they hadn't done it before, and that they were both pleased."

The parties and their attorneys then proceeded to the courtroom to record the settlement. During the process of making the agreement a matter of record, the court questioned the parties as to their understanding of the terms being dictated and the voluntariness of their assent. At the conclusion of the recording of the settlement, the court again questioned the parties:

"THE COURT: Mr. and Mrs. Kalman, do you have any objection to this agreement?

MR. KALMAN: No.

THE COURT: If you say no, I can hold you to it. I can make you do it later. So, if you have any objections, voice it now. Don't be afraid.

MRS. KALMAN: No, I don't.

THE COURT: Mr. Bertacchi?

MR. BERTACCHI: No.

THE COURT: You understand, if you agree to this now, I can enforce it.

MR. BERTACCHI: I understand."

Approximately 30 minutes after the hearing was concluded, Rino Bertacchi and his attorney returned to the judge's chambers informing the court that the defendant had agreed to accept the $59,000 offer on the misapprehension that the court had recommended the figure. At that time, following the plaintiffs' refusal to voluntarily set aside the agreement, the matter was set for a hearing at which time Rino Bertacchi was to testify as to what occurred at the private meeting with Kalman in the judge's chambers. That hearing took place October 18, 1976, when both Bertacchi and Kalman testified as to their meeting. At the hearing,

the defendants' counsel, on behalf of all the defendants, formally withdrew the oral acceptance of Rino Bertacchi. Bertacchi testified that Kalman had a piece of paper with some figures on it and from Kalman's remarks and reference to that paper, he received the impression that the judge had recommended the $59,000 figure. However, in response to questioning by the court, he admitted that the court never made any recommendations regarding money. He further testified that upon leaving the building immediately following the recording of the agreement, he remarked to his attorney that he "was losing too much. I saw I was losing a lot of money on it. * * * It was unfair, that's all." Kalman testified that he recalled the statement by the court that "[o[n the question of money, I have no recommendation," and that he himself never told Bertacchi that the judge had recommended the $59,000 settlement figure. After hearing the arguments of counsel, the court found that there was a valid settlement, and pursuant to the plaintiffs' petition to enforce the settlement agreement, entered an order finding that the settlement agreement reached by the parties in open court on October 8, 1976, was a "valid, subsisting, and enforceable agreement." The defendants were granted leave to file formal objections to the agreement drafted by the plaintiffs' attorney, apparently based on alleged inconsistencies between that document and the October 8 transcript.

On October 28, 1976, the plaintiffs' motion to compel observance of the settlement agreement was heard by the court. The defendants objected on the grounds that the settlement was in violation of the Statute of Frauds, that it resulted in an unconscionable advantage to the plaintiffs, and that the agreement of Rino Bertacchi did not bind Louis and Mary Bertacchi. The court signed the order submitted by the plaintiffs, deleting the word "agreed" from its heading, allowing the defendants five days in which to file any objections, and instructing the clerk not to enter the judgment until the defendants' objections were heard.

On November 8, 1976, the court heard the objections of the defendants: (1) that the order disposed of the beneficial interests of Louis and Mary Bertacchi without their authorization, consent or participation; (2) that the settlement was unconscionable; (3) that the agreement of Rino Bertacchi was based on a misapprehension of material fact that the settlement figure had been agreed to by counsel for the parties and the court; and (4) that the agreement was voidable under the Statute of Frauds. The court overruled these objections and ordered the judgment signed October 28 to be entered. The defendants made no motion to stay judgment pending appeal.

On November 30, 1976, the court heard the defendants' motion to vacate the judgment order on the grounds that there were inconsistencies between the order entered November 8 and the October 8 agreement

dictated in court, and the previously stated objections to entry of the order set forth on November 8. The defendants' motion to vacate was denied, as was their motion for a stay of judgment, the court finding no just reason for delaying enforcement or appeal from the order. It is from the November 8, 1976, judgment and the November 30 denial of the motion to vacate that the defendants appeal.

■■ It is clear from an examination of the record in this case that the defendants' arguments regarding the misunderstanding of Rino Bertacchi and the unfairness of the agreement are without merit. Both the court and the plaintiff, William Kalman, specifically recalled the court's statement to Kalman and Bertacchi prior to leaving them in chambers to discuss money that "[o]n the question of money, I have no recommendation." Kalman testified that he never said to Bertacchi that the judge had recommended the $59,000 figure, and that he used his own figures, not the notes left by the judge in chambers, in his discussion with Bertacchi.

While the agreement was being dictated into the record, Bertacchi repeatedly answered affirmatively when questioned about whether he understood the settlement and had agreed to it voluntarily. It was only after Bertacchi apparently decided that he was "losing too much" and that the settlement was "unfair" that he claimed to have been misled, initially asserting that he had thought the judge recommended the figure, then that his attorney had agreed to it, and then that both attorneys and the court had agreed to it. The trial court observed the conduct of the parties throughout the trial and the negotiations which led to the settlement, and was in a superior position to determine their credibility and weigh the evidence regarding the defendants' claim. We find no reason to upset the determination of the trial court that the settlement was valid and enforceable. The court in *Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 868-69, 356 N.E.2d 837, discussed general principles of law regarding settlements:

> "Settlements are to be encouraged and given full force and effect. They should not be set aside absent a showing of fraud or mistake. (*Zamouski v. Gerrard* (2nd Dist. 1971), 1 Ill. App. 3d 890, 895, 275 N.E.2d 429.) Such agreements are recognized by the courts where they are based on sufficient consideration and the parties have met on equal terms. (11 Ill. L. & Pr. *Compromise & Settlement* §2 (1955).) A settlement based on an oral agreement may be enforced. (*Zamouski*, at 895; *Theatre Time*, at 174.) These agreements are binding so long as there is clearly an offer and acceptance to compromise, and there is a meeting of the minds as to the terms of the agreement. 11 Ill. L & Pr. *Compromise & Settlement* §3 (1955); 15 Am. Jur. 2d *Compromise & Settlement* §6 (1964)."

The important factor is that the parties knowingly and voluntarily accept the settlement, and we find the trial court did not err in finding that the parties in the case at bar knowingly agreed to the terms of the agreement. If there was any misunderstanding about the source of the $59,000 figure agreed upon, it was a unilateral one, and the defendants are bound to the agreement knowingly entered. *Sheffield Poly-Glaz, Inc.*, at 870.

■■ Nor is the agreement manifestly unfair and unconscionable. The defendants contracted to build and convey to the plaintiffs a house and the underlying property for $79,000 plus agreed upon extras which raised the price to $84,500. The settlement agreed upon was that the plaintiffs would pay $39,000 in cash, in addition to the $20,000 which had already been paid to the defendants, in return for a conveyance of the property and the partially built house. The defendants' arguments regarding the costs of litigation, costs of completion, and lost profits are irrelevant, as is any question as to *why* Bertacchi agreed to settle the case. We find no mistake of fact or law or misunderstanding here which would justify upsetting the compromise agreement reached by the parties. To hold otherwise in light of this record and the repeated assertions by both parties that they understood what they were agreeing to and did so with full knowledge of the binding effect of their agreements, would permit parties to negate a settlement simply because they later changed their minds as to the wisdom of their compromise. See *Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 870-71, 356 N.E.2d 837; *Knoll v. Swanson* (1968), 92 Ill. App. 2d 398, 404, 234 N.E.2d 543; *Metropolitan Life Insurance Co. v. Schwarz* (1941), 310 Ill. App. 205, 215-16, 33 N.E.2d 934.

■■ The defendants further argue that the settlement entered into by Rino Bertacchi would not be binding on his co-defendants when they were not present, did not participate in negotiations, and did not authorize their attorney to settle the litigation. We find that the trial court properly rejected this claim. The defendants' supplemental counterclaim stated that regarding the real estate conveyance and the construction of the house to be built on that property, Louis and Mary Bertacchi had acted "by and through the agency of Rino Bertacchi." At no time during the years preceding the settlement did Louis or Mary Bertacchi have contact with the plaintiffs or their attorney; at no time during the 33 days of trial preceding the settlement was Louis or Mary Bertacchi present. No question ever arose as to any need to consult with them. The existence of any agency relationship and its nature and extent may be shown by circumstantial evidence, with reference to the situation of the parties, the property and the acts of the parties. *City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 170 N.E.2d 569; *Mitchell v. Sherman E. McEwen Associates, Inc.* (1935), 360 Ill. 278, 196 N.E. 186.

"An agent's authority may be presumed from silence of the alleged principal when he knowingly allows another to act for him as his agent, and the agent's scope of authority may be determined by what persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent, might rightfully believe him to have on the basis of the principal's conduct. (*Lauhoff v. Automobile Ins. Co.*, 56 F.Supp. 493 (E.D. Ill. 1944). See also *Alterman v. Lydick*, 241 F.2d 50 (7th Cir. 1957).) Where the principal * * * places an agent * * * in a situation where he may be presumed to have authority to act for her, the principal is estopped as against a third person from denying the agent's apparent authority. *Faber-Musser Co. v. Dee Clay Manufacturing Co.*, 291 Ill. 240, 126 N.E. 186 (1920)." *Elmore v. Blume* (1975), 31 Ill. App. 3d 643, 647, 334 N.E.2d 431.

Rino Bertacchi had acted on behalf of all the defendants from the outset of the litigation. The circumstances of this case, when viewed in their entirety, constitute events and actions which would reasonably lead an ordinarily prudent person to believe that Rino Bertacchi was acting on behalf of all the defendants. Consequently, Louis and Mary Bertacchi are not relieved from the binding effect of the settlement. See *Alterman v. Lydick* (7th Cir. 1957), 241 F.2d 50, 52-53.

■■ ■ Finally, the defendants argue that the settlement is unenforceable under the Statute of Frauds, which states in part:

"No action shall be brought to charge any person upon any contract for the sale of lands * * * unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party. * * *" Ill. Rev. Stat. 1975, ch. 59, par. 2. —

In the case at bar, an agreement was arrived at by the parties and stated in open court; it was dictated to a court reporter and made a matter of record; each of the parties and their respective attorneys agreed to and understood the terms of the agreement. The entire proceeding was under the guidance and supervision of the court and clearly, the mischiefs anticipated by the Statute of Frauds could not arise in this case. (*Carlsen v. Carlsen* (1958), 49 N.J. Super. 130, 136, 139 A.2d 309, 313.) While recorded testimony has no signature, a signature's only purpose is authentication, and this is amply supplied in the case of an admission in court. (Corbin, Contracts §519, at 761 (1950); see also *Trossbach v. Trossbach* (1945), 185 Md. 47, 42 A.2d 905; *Sealock v. Hackley* (1946), 186 Md. 49, 45 A.2d 744; *Zlotziver v. Zlotziver* (1946), 355 Pa. 299, 49 A.2d 779.) It is not the intention of the Statute of Frauds to affect stipulations made in a court and subject to the court's supervision and control. The

purpose of the Statute is not forsaken in view of the fact that proof of the existence of an agreement is a matter of court record and cannot be disputed.

There is no justification for the repudiation by the defendants of a settlement fairly and openly negotiated, and no good reason why such settlement should not be enforced in this case. Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and SIMON, JJ., concur.