## Mike G. Kusek, Appellee, v. Allied Packers, Inc., and Parker-Webb Company, Appellants.

## Gen. No. 31,481.

1. AGENCY—*establishing by agent's statements.* The relationship of principal and agent cannot be established by the statements of the agent made out of the presence of the principal.

2. AGENCY—*admissibility of agent's words or deeds concerning.* Evidence is inadmissible to prove an agency if it consists only of evidence of the words and deeds of the alleged agent without any tracing of the alleged agency to the principal.

3. AGENCY—*admissibility of agent's statements before formation of.* Conversation of an alleged agent as to the fact of his agency, stated before the agency was claimed to have been formed, is not admissible to prove the agency.

4. AGENCY—*admissibility of conclusions as to.* In an action to re-
cover for goods sold and protest fees on dishonored checks of an
alleged agent, from alleged principals, the court erred in admitting
the testimony of the agent in which he did not attempt to give the
substance of a conversation with the principals but merely his conclu-
sions that he was thereby made their agent.

5. AGENCY—*effect of relying on agent.* One who relies on and deals
solely with an alleged agent in his sale of goods cannot afterwards
demand the alleged principals make good the alleged agent's failure
to pay.

Appeal by defendants from the Superior Court of Cook county; the
Hon. JACOB H. HOPKINS, Judge, presiding. Heard in the third division
of this court for the first district at the October term, 1926. Reversed.
Opinion filed October 19, 1927. Rehearing denied November 10, 1927.

ROSENTHAL, HAMILL & WORMSER and PHILLIPS, MACK
& O'BRYAN, for appellants; WILLARD L. KING and ED-
WARD M. O'BRYAN, of counsel.

CRAFT, EDGERTON & FRAIZER and PHILLIP J. MAGUIRE,
for appellee; PHILIP J. MAGUIRE and F. E. EDGERTON,
of counsel.

MR. JUSTICE WILSON delivered the opinion of the
court.

This action is predicated on a single count for hogs
sold and delivered at an agreed price of $4,598.38, and
for protest fees on dishonored checks amounting to
$14.78, with interest from June 20, 1923. The action
is in assumpsit and to the declaration were filed pleas
of nonassumpsit by the Parker-Webb Company and
the Allied Packers, Inc., appellants herein.

The facts show that one Alvin Whitton was engaged
in the business of stock buying, and under arrange-
ments with the Parker-Webb Company at Detroit,
Michigan, procured and shipped a consignment of hogs
to that company, for which he received a price of 25.
cents a hundred over the top price at St. Louis, the
Parker-Webb Company paying the freight. It is un-

contradicted that up to and until early in June, 1923, the relationship between Whitton and the Parker-Webb Company was purely that of buyer and seller. It appears from the facts, and is uncontradicted, that one W. F. Maudlin was employed as an agent by Whitton sometime in April, 1923, and bought hogs for Whitton for which he gave his own personal checks. These checks were drawn on the Bank of Brayton, at Brayton, Nebraska, and the account in that bank was in the name of W. F. Maudlin for Alvin Whitton. It appears that when his account was in need of money Maudlin would draw a draft on Whitton, on the Bank of McFall, and that he was accustomed to sign drafts in blank and leave them with the cashier of the Brayton Bank.

Among the persons from whom Maudlin bought hogs was one Mike G. Kusek, appellee herein, living at Elyria, Nebraska. These hogs were shipped directly to the Parker-Webb Company, as consignee, at Detroit, with an arrangement by which they were sidetracked at Aurora where they were weighed and fed by Maudlin. They then continued on to the consignee at Detroit. It appears that this arrangement of a direct shipment to Parker-Webb was to avoid the expense of an increased freight rate, by reason of a shipment to Aurora, and then a separate shipment from Aurora to Detroit.

After the hogs were shipped Whitton drew sight drafts on Parker-Webb while the hogs were in transit. Appellee made four shipments of hogs on the days respectively, June 20th, 25th, 26th and 28th of 1923, which were the last shipments made by him and upon which this claim is founded. Kusek received for those four shipments checks from Maudlin, which were subsequently dishonored. The theory of appellee is that Whitton was the agent of the Parker-Webb Company and that Parker-Webb and the Allied Packers, Inc., were one and the same company, or so closely connected

as to be acting in concert and connectedly. This contention is based upon a conversation between Maudlin and the appellee, Kusek, at Elyria, where, from the evidence of Kusek, it appeared that he was standing at the depot and was introduced to Maudlin by a conductor of one of the trains that was passing through, and that Maudlin stated to him, Kusek, that he was the agent of Parker-Webb. This conversation appears to have taken place sometime during the latter part of April or the first part of May, 1923. It is further contended in support of appellee's contention that Maudlin was the agent of Parker-Webb, that Whitton, for whom Maudlin was working, had a conversation with Parker-Webb, in Chicago, in which the original arrangement of buyer and seller between Parker-Webb and Whitton was changed, and that thereafter Whitton was buying for Parker-Webb. This conversation is charged to have taken place sometime early in the month of June. It is further insisted by appellee that by a course of action Parker-Webb recognized Maudlin as its agent, and that it is estopped to deny this agency because of such conduct; and that Kusek had the right to rely upon it and consider that he was dealing with Maudlin as the agent of the Parker-Webb Company. It nowhere appears in the record that Kusek, after his first talk with Maudlin, made any investigation on his own account to ascertain the relationship between Parker-Webb and Whitton or Maudlin. He dealt directly with Maudlin and his consignments were shipped to Parker-Webb under the direction of Maudlin, and it is questionable whether he would have made any objection to any other consignee, if he had been so directed to make shipments, by Maudlin, to any other consignee. So that, outside and apart from the testimony concerning the two particular conversations, the facts appear to be clear that Kusek was dealing directly with Maudlin, receiving payments for his shipments from him, and following his directions

concerning such shipments. So far as the question of estoppel by conduct to, on the part of Parker-Webb is concerned, the facts are uncontradicted that prior to June 1, 1923, Kusek had made a number of shipments to Parker-Webb, through Whitton and Maudlin, although during this period of time, as stated heretofore, it is uncontradicted that there was no relation of principal and agent between Whitton and Parker-Webb, and consequently no relationship as principal and agent between Parker-Webb and Maudlin, so that the course of conduct, if any existed, which created an estoppel, can only date from the alleged conversation of Whitton with Parker-Webb in Chicago, which, as already stated, was sometime in the early part of June. Moreover, it is clear from the record that Kusek did not rely upon such conversation, because he knew nothing of it and assumed that he was doing business, as he had previous to that time. The drafts which were drawn on Parker-Webb, covering the four shipments in question, were paid by them but it appears in the record that Whitton was in default and did not see that the funds provided were used for the purpose of paying for the hogs in question. In approaching a consideration of the question as to the reliability of the testimony of Whitton, Maudlin and Kusek, it is well to bear in mind that each of said parties was interested and is interested in the outcome of the litigation, Whitton, because of the fact that if Parker-Webb should be considered the principal he would be released from liability under the allegations of the declaration in this case, so also would be Maudlin. Kusek would naturally be interested because it is apparent that his chances of recovery against Whitton and Maudlin are small, in view of the fact that the checks drawn in payment for the shipments, by Maudlin, were dishonored and Maudlin's principal Whitton has not made good on the amount involved. In approaching the question as to the testimony of

Kusek, concerning the conversation between himself, the conductor and Maudlin, at Elyria, it is well to bear in mind the fact that said conversation occurred sometime before the conversation of Whitton with Parker-Webb in Chicago, and it is not contended by · anybody in the case that previous to that conversation Whitton was acting as the agent for Parker-Webb, but the facts are clear that the only relationship was that of buyer and seller, so that when Maudlin made the alleged statement to Kusek, in Elyria, he was not, in fact, the agent of Parker-Webb, and there would seem to be no reason why he should make such a statement that he was the agent if it was not based on the fact. Moreover, in our opinion, the conversation was improperly admitted, in view of the fact that its purpose was evidently to establish a relation of principal and agent, and this relationship, under the law, cannot be established by the statements of the agent out of the presence of the principal. *Merchants' Nat. Bank of Peoria v. Nichols & Shepard Co.,* 223 Ill. 41. The court in its opinion, page 49, says: "It is to be remembered that persons dealing with an assumed agent are bound, at their peril, to ascertain not only the fact of the agency, but the extent of the agent's authority. They are put upon their guard by the very fact that they are dealing with an agent, and must, at their peril, see to it that the act done by him is within his power. It is their right and duty to ascertain the extent of his power, and to determine whether his act comes within the power and is such as to bind his principal. (Mechem on agency, sec. 276; *Reynolds v. Ferree,* 86 Ill. 570; 1 Am. & Eng. Ency. of Law, —2d. ed.—987.) An agent cannot confer power upon himself, and therefore his agency or authority cannot be established by showing either what he said or did. (*Proctor v. Tows,* 115 Ill. 138; *Mullanphy Savings Bank v. Schott,* 135 id. 655.) The source of authority is the principal, and the power of the

agent can only be proved by tracing it to that source in some word or act of the alleged principal.'' There being no testimony as to the relationship of principal and agent at the time of this conversation, other than the alleged conversation itself, we believe that the conversation would be inadmissible and that it was error to permit it to go in. Moreover, as has already been stated, it is admitted and shown by the record that at the time of the alleged conversation there was no relation of principal and agent between Parker-Webb and Maudlin, and for that reason, if none other, the conversation would not be binding, as certainly a person could not bind another as principal where there was no relationship existing at the time. So far as the alleged conversation between Whitton and Parker-Webb' is concerned, it appears from the record (Abst. 5) that Whitton was requested by Parker-Webb to go to the office of the company in Chicago, and that he did so, and met a Mr. J. A. Hawkinson, who it is admitted was the president of the company, at which time and place he had a conversation with Hawkinson, which was permitted to go in both as against the Parker-Webb Company and the Allied Packers, although the trial court found in a special finding (Abst. 146) that the defendant, Parker-Webb Company, was not the agent of the defendant Allied Packers Company, and that the Allied Packers Company was not the agent of the defendant Parker-Webb Company. Whitton testified (Abst. 6) that in his conversation Hawkinson told him that the hogs were costing too much and that he would have somebody else go over this matter; that he called in two or three fellows ''and told them to go over this matter with me and see if we could not make a deal''; that he, Whitton, then went into another office and that he had a conversation with two persons, to him unknown and whose names he could not recall; that they there looked up the rates and agreed that Whitton was to buy these

hogs and that they were to give him 10 cents a hundred for buying them. Objections were made to this line of testimony, but it was permitted to go in subject to objection. In none of the conversation did the witness give or attempt to give what was said by and between himself and these unknown persons, nor was the conversation given directly nor was an attempt made to give it in substance, but the result of the answers seems to be the conclusions of the witness as to what the result of the conversation was, and in the view we take of this case, we feel that the court committed error in permitting it to go in, in the manner in which it did. There was no written contract, and the contract, if any there was, should be established by competent testimony. Moreover, as the record stands before us, it appears that Kusek, himself, looked only to Maudlin for the payment of his shipments and that his dealings were directly between himself and Maudlin, and that at no time did he rely on the responsibility of Parker-Webb or the Allied Packers.

For the reasons hereinbefore stated, the judgment of the superior court is reversed.

*Judgment reversed.*

Taylor, P.J., and Holdom, J., concur.