**In re Allen W. PARKER, Jr., Wanda S. Parker, Debtors.**

**Bankruptcy No. 1–81–01776.**

United States Bankruptcy Court,
E. D. Tennessee.

Dec. 16, 1981.

Robert J. Harriss, Rossville, Ga., for debtors.

Mark J. Mayfield, Chattanooga, Tenn., for Credithrift of America, Inc.

Kyle R. Weems, Chattanooga, Tenn., amicus curiae.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The debtors filed a chapter 13 case under the Bankruptcy Code. In their plan the debtors proposed to pay all claims "in full".

One creditor, Credithrift of America, Inc., objected to confirmation of the debtors' plan. The creditor's main objection is that the plan does not provide exactly how the trustee will make payments, especially with regard to payment of the debtors' attorney's fee.

Credithrift also argued that the debtors' attorney must file a proof of claim in order to be paid his fee through the chapter 13 plan.

■ The latter argument can be easily dealt with. It is admitted that the fee is an "administrative expense" under Bankruptcy Code (11 U.S.C.) §§ 330(a) and 503(b)(2). Administrative expenses are paid without the filing of a proof of claim. Only a "request" for payment is required. 11 U.S.C. § 503(a). See also 9A Am.Jur.2d, Bankruptcy § 582 (1980). As with other administrative expenses, the court controls payment of the debtors' attorney's fee without the necessity of filing a proof of claim. See 11 U.S.C. §§ 329 & 330(a); Bankruptcy Rule 13–210. Credithrift's argument is rejected. The debtors' attorney in a chapter 13 case need not file a proof of claim in order to be paid his fee for representing the debtors in the chapter 13 case.

Credithrift further argues that the Bankruptcy Code requires the debtors' plan to provide that

"... debtor's attorney fees be paid as a deferred payment (after payment of all other claims) or in payments over the life of the plan."

Credithrift also contends that the provisions of debtors' plan are conflicting and too vague on how debtors' attorney will be paid by the trustee.

The debtors' plan provided as follows:
2. The debtor proposes that:
a. Administrative expenses under 11 U.S.C. §§ 503(b) and 1326 be paid in full.
b. Claims entitled to priority under 11 U.S.C. § 507 be paid in full in deferred cash payments.

The debtors' attorney's fee is an administrative expense. An administrative expense is also a "priority" claim. 11 U.S.C. § 507(a)(1).

■ The court will first discuss "priority" claims generally. "Priority" has to do with the order of payment among unsecured claims. 9A Am.Jur.2d, Bankruptcy §§ 689 & 691 (1980). A priority claim is one that is entitled to payment ahead of other "general" unsecured claims, like Credithrift's claim in this case.

■ A chapter 13 plan must provide for payment of priority claims in full in "deferred cash payments". 11 U.S.C. § 1322(a)(2).[1] Credithrift makes the argument that this means all priority claims must be paid in installments over the length of the plan. The argument is wrong. "Deferred cash payments" is terminology imported from Chapter 11. 11 U.S.C. § 1129(a)(9). In a chapter 11 case, certain priority claims must be paid in cash in full before the effective date of the plan, unless the claimant agrees to less favorable treatment. Other priority claims can be paid in deferred cash payments. That means they can be paid after the effective date of the plan and in more than one payment.[2] That is all "deferred" means. It does not mean that payment of priority claims must be deferred to the payment of any other claims.

■ "Deferred cash payments" does not explain how the trustee must divide payments between the priority claims and other claims. Section 1322(b)(4), however, allows the plan to provide for payment on any unsecured claim to be made concurrently with payment on any other unsecured claim. Thus, payment on priority claims

1. In § 1322(a)(2) as in § 1129(a)(9)(A), administrative expenses are considered a "claim" entitled to priority, though they are not always treated as other claims. See 11 U.S.C. §§ 503(a), 507(a), 101(4)(A).

2. As to the meaning of § 1129, see S.Rep.No. 95 989, 95th Cong., 2d Sess. 128 (1978); H.R. Rep.95-595, 95th Cong., 1st Sess. 413 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; 124 Cong.Rec. H11,103 (daily ed. Sept. 28,

1978) (Remarks of Rep. Edwards). In chapter 13 "deferred cash payments" was added to make it clear that priority claims can be paid in "deferred cash installments under the general rules applicable to the payment of debts in a wage-earner plan." S.Rep.No.95-1106, 95th Cong., 2d Sess. 34 (1978). Compare also § 6 206 of the Bankruptcy Commission's recommended bill. H.Doc.No.93 137, 93d Cong., 1st Sess., Part II 210 211 (1973).

can be made concurrently with payment on general unsecured claims. This is a significant difference between chapter 13 and chapter 7. In a chapter 7 liquidation case, the trustee cannot make any distribution on general unsecured claims until all priority claims have been paid in full. 11 U.S.C. § 726. In a chapter 13 case, the trustee can make payment on priority claims concurrently with payment on general unsecured claims, if the plan allows it.

■ Thus far, the court has considered all priority claims as the same, but they are not. Section 1326(a)(1) provides that "[b]efore or at the time of each payment to creditors . . . there shall be paid any unpaid claim of the kind specified in section 507(a)(1) . . . ." Section 507(a)(1) includes administrative expenses and fees or charges assessed against the estate under chapter 123 of title 28 of the United States Code. This does not mean that priority claims under § 507(a)(1) cannot be paid in deferred cash payments. It means only that the trustee cannot make any payment on the claims of creditors unless at the same time he pays administrative expenses and fees or charges imposed by title 28.

Amicus curiae argued that this means that the trustee must pay administrative expenses in full before he can make any payment to creditors. The court does not agree.

■ Section 1326(a)(1) together with § 1322(b)(4) clearly allow concurrent payments, rather than one concurrent payment, which is all amicus's argument would allow. "Deferred cash payments" neither helps nor hurts amicus's argument. Administrative expenses do not have to be treated like fees or charges imposed by title 28. They are in a separate class. The trustee may be required to pay them in full before or when he begins payment on any other claims. But that requirement comes from title 28 or from the plan. 11 U.S.C. § 1325(a)(2). It does not come from § 1326(a)(1). See generally 5 Collier on Bankruptcy ¶ 1326.-01[2][a] (15th ed. 1980). The court rejects the argument that administrative expenses must be paid in full before any payments can be made to other creditors.

■ There is another charge that must be paid like administrative expenses. If there is a standing chapter 13 trustee he may be authorized to collect a percentage fee. 11 U.S.C. § 1302(e)(1)(B). It must be paid before or at the time of any payment to creditors. 11 U.S.C. § 1326(a)(2). That does not mean that it must be paid in full before any payment to creditors. The trustee can apply the percentage as he makes payments.

Credithrift would disagree with the court's conclusion that payment of the attorney's fee must begin with the first payment to creditors in all cases. Credithrift would contend that the statute must be read in light of the rights of secured creditors. Administrative expenses are a priority "unsecured" claim. In a sense, secured claims may be said to have "priority" over all unsecured claims because they are different in kind. Though Credithrift is not the holder of a secured claim in this case, the court thinks it best to consider the argument in order to have a complete exposition of how the trustee can make payments.

A secured claim represents the holder's rights in specific property. The holder of a secured claim generally must receive out of the bankruptcy estate the property or its value up to the amount of the secured debt. 11 U.S.C. § 506(a), (b), & (c). The holder of an allowed secured claim has not just a general claim but property which it is entitled to receive. 9A Am.Jur.2d, Bankruptcy § 689 (1980). In that sense, secured claims are first priority claims in bankruptcy cases.

In any chapter 13 case, the debtor's payments to the trustee must be enough for him to pay the secured creditors as required by the plan and to satisfy § 1326. A plan can be confirmed only if it meets those requirements. 11 U.S.C. § 1325(a)(1). Beginning with the first payment, the trustee should have enough money to make the required payments on secured claims and to make a partial payment of administrative expenses. The payment of administrative

expenses may delay payment on other unsecured claims, none of which could have priority over administrative expenses.

■ The trustee is not required to defer the payment of administrative expenses to the payment of secured claims. He could pay administrative expenses in full before making any payment on secured claims. Section 1326 allows that.

The secured creditors could not object that the delay in payment would deprive them of·"adequate protection". 11 U.S.C. §§ 361 & 363(e). A chapter 13 plan is confirmed on the assumption that it will be successfully completed and on the finding that it is likely to be successfully completed. 11 U.S.C. § 1325(a)(6). If a non-assenting secured creditor is dealt with as provided in § 1325(a)(5), then its property interest is adequately protected by the plan's provisions for payment of the total value of the interest, even though payment will be made in installments. See also 11 U.S.C. § 1327. Adequate protection is no longer relevant to how much the installment payments should be, and priority of payment relative to other claims is generally controlled by the bankruptcy statute.

■ Of course, it is possible that a plan will not be successful. If payment on a secured claim is delayed, the holder runs the risk that the payments it receives up to the time the plan aborts will be less than the depreciation of the collateral. That is one reason why the trustee begins payment on secured claims immediately. But the problem is one that should be, and in this court is, considered before or at the time of confirmation. See *In re Lewis*, 8 B.R. 132 (Bkrtcy.D.Idaho 1981); *In re Brock*, 6 B.R. 105 (Bkrtcy.N.D.Ill.1981). *In re Lum*, 1 B.R. 186, 5 B.C.D. 1039, 1 C.B.C.2d 95 (Bkrtcy.E.D.Tenn.1979).

The statute allows the trustee to pay administrative expenses in full in deferred cash payments before he makes payment on secured or unsecured claims. That is not the way in which plans are set up in this court.

■ Chapter 13, in the absence of a plan to the contrary, allows the trustee flexibility in how to make his periodic distributions. That flexibility may be summarized as follows:

1. Some fees or charges imposed by chapter 123 of title 28, U.S.C., may be required to be paid before confirmation or with the first payment to creditors. If so, they are paid in full first even though that may delay payment to both secured and unsecured creditors.

2. With each payment to creditors the trustee will deduct his percentage fee. As a practical matter a plan is not confirmable if it does not provide enough money to make the monthly payments on secured claims and pay the trustee's percentage fee.

3. Administrative expenses must be paid in deferred cash payments beginning with the first payment to creditors. They generally will not be paid in full before payment on other claims begins, though such a procedure could be mandated by the plan.

4. Other priority claims must be paid in full in deferred cash payments, but payments need not begin with the first payment to creditors. Generally payment will begin when there is money to pay on general unsecured claims, and payment will be made concurrently with payment on general unsecured claims. The plan could require that all priority claims, including administrative expenses, be paid in full before payment is made on general unsecured claims. Such a plan would be to the debtor's benefit, in light of the possibility that the debtor will be unable to complete the plan. See 11 U.S.C. §§ 1328(b) & 523(a).

■ Under the plan provisions in question, the trustee's method of payment is generally as favorable to creditors as the statutes allow. From what he receives in one month, the trustee pays as follows:

1. 9%, trustee's percentage fee

2. 10% on administrative expenses, usually only the attorney's fee
3. Payments on secured claims
4. The remainder is then applied to making monthly payments on allowed secured claims as provided in the plan but not made between filing and confirmation (usually about one month)
5. Unsecured claims, priority and general.

If the payments to the trustee are not enough to pay 1, 2, and 3, as set forth above, then he will cut the percentage paid on 2 (debtors' attorney's fee) so that he can pay all of 1 (trustee's percentage fee) and 3 (payments on secured claims). The trustee also testified that if he receives only enough to pay 1 and 3, then he will not make any payment on 2 (debtors' attorney's fee) until one of the secured claims is paid in full.[3] That procedure may be questionable since § 1326(a)(1) mandates regular payments on administrative expenses. Of course, in this court the debtors' attorneys acquiesce in or agree to delayed payment. 11 U.S.C. § 1322(b)(2). It certainly helps debtors who desire to use chapter 13.

The creditor in this case knows that the chapter 13 trustee calculates at the meeting of creditors what payments over the length of the plan will be required to complete the plan in accordance with the statutory requirements. He will oppose confirmation if the debtor does not propose sufficient monthly payments. The point is that the amount the debtor must pay in order to have a confirmable plan is determined with regard to what the statutes require.

If money is available at the beginning, the trustee will begin payment on unsecured claims. He does not, however, begin with payments only on priority claims not covered by § 1326. The trustee explained that as he understands it, other priority claims are entitled to be paid in full but not necessarily before payments are begun on general unsecured claims. He makes payments concurrently and pro rata, according to what must be paid on each claim.

If money is not available at the beginning of the plan, the trustee will begin payment on unsecured claims when it becomes available, that is, when 2 or 4 or one of the secured claims is paid in full. The trustee makes payments as explained above, concurrently and pro rata.

Credithrift cannot rightfully complain of the trustee's method of carrying out the plan. It does not treat Credithrift's claim less favorably than the statutes allow. In fact, it treats Credithrift's claim more favorably than it could be treated under the statutes.

The crux of the matter is that the plan does not direct the trustee to make payments as he does or in any manner, except consistently with the statutes. The trustee has taken the lack of specificity to mean that he can adopt the method he uses because as a legal matter the plan does not prohibit it, and as a practical matter it treats creditors favorably enough to ease the administration of chapter 13 cases.

There is a flip side to Credithrift's argument. The debtor could argue that since the plan doesn't call for concurrent payments, then the trustee must pay administrative expenses in full before making any payment to creditors and must pay other priority claims in full before making any payment on general unsecured claims. The court does not agree with this view or with Credithrift's view of what a plan must say.

The question is whether the chapter 13 plan must set forth exactly how the trustee must make payments.

■■■■■ It is important to remember that chapter 13 imposes very few mandatory requirements as to the contents of a plan. Congress intended for debtors to have flexibility in dealing with their creditors. S.Rep.No.95–989, 95th Cong., 2d Sess. 141 (1978). One mandatory requirement is that the plan provide for payment of priority claims in deferred cash payments. Nothing in the statutes says that the plan must

---

**3.** Since a month is usually not exactly four weeks, the trustee will receive in each quarter some "extra" money to be paid out under the plan.

explain how the installment payments by the trustee will be divided between the priority claims and other claims.

It is best that creditors know exactly how their claims will be paid. That does not mean the plan must explain it. A creditor can determine from the statutes the range of options available to the trustee and the debtor in dividing the installment payments. Examination of the plan will reveal whether it requires that the payments be divided in some manner not allowed by the code. The trustee is constrained to make payments only as allowed by the code. The court cannot confirm a plan that provides for division of the installment payments in some manner not allowed. 11 U.S.C. § 1325(a)(1). A chapter 13 plan is not required to explain the result of applying the statutes.

Furthermore, there are practical problems with setting forth the exact method of payment in the plan. The statutes are more complex than they first appear. There would be a great possibility of error in attempting to draft a provision that explains exactly how the trustee is to divide the payments. There is much to be said for the present system that allows the trustee some leeway in dividing the payments, yet also operates with a great degree of certainty. Few debtors propose plans that require the trustee to make payments by some method other than his usual one. Not only are the statutes available to explain his usual method, but the trustee himself is present at every chapter 13 meeting of creditors. Debtors' attorneys could decide that some other methods less favorable to creditors suit their clients' needs better. They could propose plans that require the trustee to pay by such methods. The proliferation of such plans would truly complicate the administration of chapter 13 cases not only to the detriment of the trustee but also the the detriment of creditors.[4] Though creditors need to know how their claims will be paid relative to other claims,

that need is met without unduly complicating chapter 13 plans by having them provide exactly how the trustee will divide the payments.

As the court sees it, the chapter 13 plan form used by debtors could reasonably be amended to provide as follows:

2. The debtor proposes that the trustee make payments as required by §§ 1322(a)(2) & 1326(a). Payments may be made concurrently with payment on any other claim, secured or unsecured, when consistent with the statutes.

The court does not believe it is necessary for the plan to explain exactly how payments will be made. The proposed provision requires the plan to meet the statutory requirements and makes it clear that the trustee will make concurrent payment on priority and general unsecured claims, except to the extent § 1326(a)(1) requires otherwise. It should also make it clear that the trustee will make concurrent payment on secured claims and claims under § 1326. As the court pointed out earlier, what the debtor must pay in order to have a plan confirmed is determined with such a payment method in mind.

In closing, the court notes that experience has shown that debtors use chapter 13, rather than chapter 7, only in areas where its use is fostered by the court and by the bar, both those who represent debtors and those who represent creditors. Report of the Commission on Bankruptcy Laws of the United States, H.Doc.No.93–137, 93d Cong., 1st Sess., Part I at 157–158 (1973). It should be pointed out that nationwide chapter 13 cases are approximately 24% of the total number of bankruptcy cases filed. In this court they are approximately 55%.

In Chattanooga chapter 13 plans work very well. After payment of trustee's expenses and debtors' attorneys' fees, creditors receive large payments from the chapter 13 trustee each month. Court records indicate the following payments to creditors:

---

4. The chapter 13 trustee for this court regularly has one of the most efficient operations in the country.

| | 1980 | 1981 |
|---|---|---|
| January | $ 176,127.03 | $ 277,132.74 |
| February | 193,076.31 | 435,590.28 |
| March | 249,860.58 | 351,076.73 |
| April | 216,438.92 | 359,495.51 |
| May | 229,447.96 | 349,868.60 |
| June | 346,461.69 | 611,154.72 |
| July | 231,846.66 | 343,549.05 |
| August | 243,365.24 | 476,885.35 |
| September | 317,396.84 | 393,859.13 |
| October | 307,753.45 | 377,693.32 |
| November | 369,445.22 | 516,567.29 |
| December | 383,109.19 | 537,071.14 |
| TOTAL | $3,264,329.09 | $5,029,943.86 |

Under the present system, a debtor's attorney is not paid his fee as soon as he could be if the plan required it. Credithrift argues that payment should be delayed even more than it presently is. No doubt that would result in the filing of fewer chapter 13 cases and more chapter 7 cases, much to the detriment of creditors.

Credithrift's objection to confirmation is denied.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.