## In re ENGLEWOOD COMMUNITY HOSPITAL CORPORATION, Debtor.

### Bankruptcy No. 88 B 04795.

United States Bankruptcy Court, N.D. Illinois, E.D.

July 26, 1990.

---

Richard G. Smolev, Sachnoff & Weaver, Ltd., Chicago, Ill., for trustee.

Joseph Stein, Sachnoff & Weaver, Ltd., Chicago, Ill., trustee.

Ariel Weissberg, Anthony V. Ponzio, Weissberg and Associates, Ltd., Chicago, Ill., for Photographic Conservation Associates, Ltd.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of Photographic Conservation Associates Ltd. ("PCA") for the allowance and payment of administrative and possessory lien claims.[1] For the reasons set forth herein, the Court hereby denies the motion.

---

1. PCA resolved the issue of the possessory lien claim, pursuant to the Court's suggestion, at the May 24, 1990 hearing. The parties agreed to a release of PCA's statutory lien claim on the Debtor's medical records in exchange for the Trustee opening a special account for the amounts sought by PCA, as amended, to reflect storage charges and access or record charges for the months of May and June, 1990. At the hearing on June 21, 1990, the parties agreed that a segregated account was unnecessary due to the fact that the Trustee currently holds approximately $1,000,000.00 in estate funds, which is substantially in excess of the contested claim. Accordingly, the Court need not rule on the merits of whether PCA has a valid enforceable statutory lien pursuant to Ill.Rev.Stat. ch. 82, para. 40 et. seq. (1989). Thus, the Trustee's contention that PCA's possessory lien claim violates 11 U.S.C. § 362(a)(4) need not be decided herein.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## II. FACTS AND BACKGROUND

Englewood Community Hospital Corporation (the "Debtor") ceased its business operations in February 1988. The Debtor operated a community hospital. When the Debtor closed, it housed forty years of medical records dating from approximately 1947. On March 25, 1988, shortly after the Debtor ceased operations, it filed a Chapter 7 petition. Subsequently, Joseph Stein (the "Trustee") was appointed trustee of the estate. Hence, rights to, possession of, and duties to maintain the Debtor's records became the responsibility of the Trustee as representative of the estate. *See* 11 U.S.C. §§ 323, 521(4), 541(a)(1), 542(a) and 704(2).

On July 20, 1988, the Trustee presented an emergency motion for authority to retain The Devon Group for the purpose of establishing a retention and disposition program for the Debtor's medical records. (PCA Exhibit No. 3, p. 6). At that hearing, after notice (PCA Exhibit No. 4), the Court entered an order authorizing the Trustee, inter alia, to retain The Devon Group for the purpose of removing microfilmed records from the premises of the Debtor. On August 1, 1988, after further hearing on that motion, the Court entered an Order authorizing "The Devon Group to undertake a records disposition and retention program with respect to all records of the Debtor and to expend $59,700.00 in connection therewith." (PCA Exhibit No. 3, p. 8). It is undisputed that this sum has been paid from estate funds to The Devon Group.

The Trustee's emergency motion related to a July 6, 1988 proposal submitted to the Trustee by Ira Berlin ("Berlin") as director of The Devon Group, entitled "Records Disposition Program for the Hospital of Englewood." (PCA Exhibit No. 1). The proposal dealt with both hard copy and microfilm patient records and states in relevant part:

Given the number of departments whose document must be checked against the medical records, this department's records must be the last in the disposition process. When the updating of records has been completed, the medical records can be donated to another nonprofit organization. The Devon Group has located on [sic] organization that has agreed to accept these permanent records.

(PCA Exhibit No. 1, p. 64).

The proposal also identified the quantity and location of the records and proposed that they be permanently retained but relocated. (PCA Exhibit No. 1, p. 64–65). It also contained photographs illustrating the volume and manner of storage, the location of both the boxed and shelved hard copy records, the microfilm records stored in cabinets and the related equipment used for retrieval and viewing of same. (PCA Exhibit No. 1, p. 66–68).

On August 25, 1988, the Trustee entered into an agreement with the Jewish International Photodocumentary Society, a not-for-profit corporation, (the "Society"), located at 1554 West Devon Avenue, Chicago, Illinois. (PCA Exhibit No. 5). The agreement which was not prepared by the Trustee, but of unknown authorship, states in relevant part: "the Society has been requested by the Trustee to retain the medical records (Appendix I); and to under take [sic] the legal retention, protection, storage and retrieval of these medical records for the former patients of Englewood Hospital; and whereas, the Society has agreed to this undertaking. . . ." (PCA Exhibit No. 5, p. 1). The Society was to commence providing these services for the medical records on September 1, 1988. The Trustee's delegate was to deliver the records to the Society. The Society agreed to abide by all record retention requirements and to respond to requests and subpoenas for the medical records, but not to charge the Trustee for these services. The agreement was signed by the Trustee and Murray M. Mattenson ("Mattenson") as executive di-

rector of the Society. The Court, however, did not authorize the Trustee to enter into this agreement with the Society.

PCA filed the instant motion and its proof of claim on April 16, 1990, (PCA Exhibit No. 17), asserting an administrative claim pursuant to 11 U.S.C. §§ 507(a)(1) and 503(b) in the amount of $19,031.00. PCA is an Illinois corporation, of which Mattenson is the sole officer, director and shareholder. (PCA Exhibit Nos. 13, 14 and 15). PCA is in the photographic conservation business. The motion alleges that PCA organizes, maintains, accesses and transports hospital and medical records. PCA has maintained a portion of the Debtor's records from October 1988 through June 1990 at its leased business facility. The Trustee filed a response in opposition to the motion, to which PCA replied. The Court conducted an evidentiary hearing on June 21 and 22, 1990.

The Devon Group is, or was, a consortium of members whose exact identities were unknown to the Trustee. The Trustee testified that the procedure to access the records prior to Berlin's death, was to send Berlin the subpoenas received by the Trustee with the checks for the fees endorsed over to Berlin. (PCA Exhibit No. 6). Subsequent to Berlin's demise, the Trustee followed the same procedure, but would endorse the checks over to Mattenson. (Trustee Exhibit Nos. 2, 3, 4, 5, 6, 7 and 8, and PCA Exhibit No. 11).

The Trustee further testified that prior to Berlin's death, no demands for rent, services or expenses were made by PCA or Mattenson. Moreover, the Trustee claimed that he never had a conversation with Mattenson prior to Berlin's death. He stated that he spoke to Mattenson two weeks after Berlin's death in regards to acting on the subpoenas. The Trustee stated that no discussions were had with Mattenson with respect to rent due and owing to PCA until March 21, 1990. (Trustee Exhibit Nos. 9 and 10).

Mattenson testified that he is sole officer, director and shareholder of PCA and resides at 1554 West Devon Avenue, Chicago, Illinois, where PCA has its principal place of business. He founded the Society, admitted that he signed the agreement between the Society and the Trustee (PCA Exhibit No. 5), but currently holds no position with the Society. Berlin was never affiliated with nor an agent for the Society except for the closing of a purchase of certain real estate. (Trustee Exhibit No. 1). Mattenson testified that in 1989 he began storing some of the hard copy records and microfilm. He stated that Berlin rented space from PCA to store the Debtor's medical records and that the Society was a subtenant of PCA under PCA's leasehold interest. (PCA Exhibit No. 12). Mattenson testified he had an oral agreement with Berlin under which he was to be paid monthly rent of $754.50 plus the subpoena fees for search, retrieval and copying the medical records. In addition, Mattenson stated that he had a conversation with Berlin, wherein Berlin assured him that the Trustee would pay rental and turn over the subpoena fees to him. Berlin made certain payments to PCA totaling $907.50 (PCA Exhibit Nos. 7 and 8) by checks imprinted as drawn on an account entitled:

Englewood Community Hospital Corporation

Debtor in Possession

The Devon Administrative Consultants Group

860 DeWitt Place, Suite 1008

Chicago, IL 60611

The hard copy medical records and microfilm comprise a total of 40,000 pounds and occupy approximately one-third of PCA's rented premises. Mattenson stated that before Berlin's death, he never had a conversation with the Trustee with regards to the medical records. The current rental paid by PCA under its lease for the entire premises is $650.00 per month plus $10.00 per month for water. (PCA Exhibit No. 12). At the time of trial, PCA increased its claim to include Mattenson's time for supervising the moving of the records in 1988 for an added charge of $5,120.00. The total of PCA's amended claim for storage ($15,844.50), microfilm and related equipment ($184.50), moving ($5,120.00), and

records retrieval for the Trustee ($330.00) equals $21,479.00. (PCA Exhibit No. 16).

## III. ARGUMENTS OF THE PARTIES

PCA alleges that the central issue is that the Trustee engaged Berlin as his agent who, in turn, hired PCA as a subcontractor to perform such services. PCA argues that the Trustee is estopped to deny that Berlin was his agent because the Trustee's agreement with the Society referenced that a "delegate" was to deliver the records to the Society and the earlier agreement with The Devon Group created an agency with the Trustee.

In his response, the Trustee maintains that the estate is not indebted to PCA. The Trustee claims that with the approval of the Court, he entered into the agreement with The Devon Group, to which the estate has paid the agreed and approved consideration for the maintenance of and access to all of the Debtor's records. Pursuant to that authority, the Trustee entered into the subsequent agreement with the Society. The Trustee contends that Mattenson, through The Devon Group, maintained the Debtor's records and performed the other required obligations along with Berlin until September, 1989, when Berlin died. The Trustee argues that at that point in time, the sole responsibility for the discharge of the obligation under the agreement with the Society fell to Mattenson.

The Trustee further alleges that Mattenson refused to discharge those obligations because he contends that he was not paid by Berlin or The Devon Group. The Trustee asserts that The Devon Group was an independent contractor, not his agent. The Trustee contends that Berlin was not his agent any more than Mattenson or PCA. None of them were authorized to be retained as professional persons under 11 U.S.C. § 327 and Bankruptcy Rule 2014(a) entitling any to compensation under sections 330 and 331. The Trustee contends that no agency by estoppel was shown by the evidence or is permitted by law under the Bankruptcy Code. Additionally, the Trustee claims that the disagreements among Mattenson, the Society, PCA and

The Devon Group should not be a burden to the estate and that PCA's administrative claim under sections 503(b) and 507(a)(1) is an attempted end run to evade or circumvent section 327(a).

Furthermore, the Trustee states that Mattenson is attempting to use PCA to seek payment for services he (through the Society) is obligated to perform under the terms of the agreement between the Trustee and the Society. The Trustee asserts that there is no basis for the allowance of PCA's administrative claim. Moreover, the Trustee argues that Mattenson's refusal to honor the terms of the agreement has prevented access to the Debtor's records by those in need of same. Lastly, the Trustee alleges that PCA's claim was not filed in accordance with Bankruptcy Rule 7001 and that the motion at bar is a proceeding to recover money which requires an adversary proceeding.

In reply, PCA asserts that section 327 is inapplicable to bar its claim. PCA argues that the Trustee failed to obtain express approval of the Court under that section to enter into the agreement with the Society. PCA further states that the agreement between the Trustee and the Society was limited to microfilm medical records as was the agreement between The Devon Group and the Trustee. PCA alleges that the agreement with the Society was never carried out and subject to numerous breaches by the Trustee. PCA argues that the Trustee was to send the Society all subpoenas and subpoena fees in connection with document requests for medical records. Supposedly, the Trustee turned over the subpoenas and the fees to Berlin on behalf of The Devon Group. PCA concludes that it has an allowable administrative claim against the estate.

## IV. APPLICABLE STANDARDS

Adjudication of disputed claims is one of the core proceedings listed in 28 U.S.C. § 157(b)(2)(B). Pursuant to 11 U.S.C. § 503(b)(1)(A), post-petition costs and expenses of preserving the estate are allowed as administrative expenses. Section 503 provides:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case: ....

11 U.S.C. § 503(b)(1)(A).

Priority statutes such as section 503 are to be strictly construed. *In re Sinclair*, 92 B.R. 787, 788 (Bankr.S.D.Ill.1988).

The burden of proving entitlement to an administrative expense is on the claimant and the standard of proof is a preponderance of the evidence. *In re Sinclair*, 92 B.R. at 788; *In re 1 Potato 2, Inc.*, 71 B.R. 615, 618 (Bankr.D.Minn.1987). The Seventh Circuit has set forth a two-prong test for determining an administrative claim pursuant to section 503(b)(1)(A). A claim will be afforded such priority if the debt both (1) arises from a transaction with the debtor (the Trustee) and (2) that transaction benefited the debtor (the estate) in the operation of its post-petition business. *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir.1984). The post-petition business involved in this matter is the maintenance, storage and retrieval of the Debtor's medical records for the benefit of former patients and other interested parties as required by applicable federal and state law.

Claims should be granted administrative priority status only if the claim comports with the language and underlying purposes of section 503. *In re Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984); *In re Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 658 F.2d 1149, 1163 (7th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982) (general rule is equality of distribution; deviation must appear in the statute). In *Jartran*, the Seventh Circuit held that when third parties are induced to supply goods or services to the debtor, and the estate is benefited, the claims of those entities should be afforded priority so as to provide incentive to third parties to furnish credit necessary for the debtor's reorganization. It cannot be said that providing administrative priority to a pre-petition claim would further this policy. *Id.* at 588–589.

In order to qualify as "actual" and "necessary" administrative expenses, expenditures must benefit the estate as a whole rather than just the creditor claimant. *In re Jartran, Inc.*, 886 F.2d 859, 871 (7th Cir.1989); *In re Jartran, Inc.*, 71 B.R. 938, 945 (Bankr.N.D.Ill.1987), *aff'd*, 886 F.2d 859 (7th Cir.1989); *see also In re Patch Graphics*, 58 B.R. 743, 746 (Bankr. W.D.Wis.1986); *In re McK, Ltd.*, 14 B.R. 518, 520 (Bankr.D.Colo.1981). In the case of *In re Subscription Television of Greater Atlanta*, 789 F.2d 1530 (11th Cir.1986), the court noted that the inclusion of the words "actual" and "necessary" in section 503(b)(1) mean that the estate must accrue a real benefit from the transaction, as opposed to mere potential benefit, for administrative expense priority to be granted on claims against the estate. The use of the terms "actual" and "necessary" were not accidental, but were included to impose the requirement that the estate is actually benefitted. *In re Carmichael*, 109 B.R. 849, 851 (Bankr.N.D.Ill.1990). The language of section 503 continues the rule under the former Bankruptcy Act that a creditor's right to payment will be afforded priority only to the extent the estate was benefited in fact from the consideration supporting the creditor's claim. *See In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976); *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119 (2nd Cir.1960).

When the claimant has established that the estate actually benefited from the transaction, then the Court can estimate the amount of the benefit by considering the reasonable use of the property. *In re Carmichael*, 109 B.R. at 851; *In re Pickens–Bond Construction Co.*, 83 B.R. 581 (Bankr.E.D.Ark.1988); *In re N–Ren Corp.*, 68 B.R. 404 (Bankr.S.D.Ohio 1986); *In re Intran Corp.*, 62 B.R. 435 (Bankr.D. Minn.1986). The bankruptcy courts have broad discretion in determining whether to award administrative expense priority.

That discretion is limited by the clear intent of section 503(b)(1)(A): the actual and necessary costs of preserving the estate. *See Jartran,* 732 F.2d at 586.

## V. DISCUSSION

### 1. *PCA'S CLAIM NEED NOT BE FILED AS AN ADVERSARY PROCEEDING*

■ The Trustee argues that PCA's claim was not filed in accordance with Bankruptcy Rule 7001 and therefore should be dismissed. The Trustee claims that. a proceeding to recover money must be filed as an adversary proceeding. Bankruptcy Rule 3001 *et seq.* governs the filing of claims against an estate. The starting point for the analysis is bankruptcy Rule 3002(a) which states:

> An unsecured creditor or an equity security holder must file a proof of claim or interest in accordance with this rule for the claim or interest to be allowed, except as provided in Rules 1019(4), 3003, 3004, and 3005.

Fed.R.Bankr.P. 3002(a).

An exception from Bankruptcy Rule 3002(a) for administrative expenses is discussed in *In re Parker,* 15 B.R. 980 (Bankr. E.D.Tenn.1981), *aff'd,* 21 B.R. 692 (E.D. Tenn.1982). The *Parker* court stated in the context of a Chapter 13 case, "[a]dministrative expenses are paid without the filing of a proof of claim. Only a 'request' for payment is required." (citations omitted). *Id.* at 982. The proposition that a holder of an administrative expense claim need not file a proof of claim, was applied in the Chapter 11 setting. *See In re Chicago Pacific Corp.,* 773 F.2d 909, 917 (7th Cir.1985).

The Trustee's response in opposition to PCA's motion, which attached its proof of claim as an exhibit, is in substance, rather than in form, an objection to the allowance of PCA's claim. The response was in writing, filed with the Court, and served more that thirty days prior to commencement of the trial. The Trustee's response only seeks disallowance of PCA's claim and does not join a demand for relief of the kind specified in Bankruptcy Rule 7001. Thus, under Bankruptcy Rule 3007, the contested motion did not become an adversary proceeding. The Court finds that PCA's motion constitutes a "request for payment" pursuant to section 503(a) and is procedurally sufficient to be decided as a contested matter under Bankruptcy Rule 9014. Accordingly, the Court concludes that a formal adversary proceeding need not be commenced to decide the issues raised at bar.

### 2. *THE AGENCY ARGUMENT*

PCA alleges that Berlin, acting in the capacity of the Trustee's agent for the medical records, made certain representations to Mattenson of PCA, which it in turn relied upon in storing the Debtor's hard copy and microfilm medical records. PCA argues that Berlin, via the Order authorizing the retention of The Devon Group, disseminated certain tasks with regard to the storage of the records. PCA argues that The Devon Group's proposal (PCA Exhibit No. 1) established an agency relationship and that Berlin himself was an agent of the Trustee shown by use of the term "delegate" in the Trustee's agreement with the Society. (PCA Exhibit No. 5, p. 2, ¶ 1). In addition, PCA submitted copies of checks payable to PCA, signed by Berlin and paid from an account in the name of Englewood Community Hospital Corporation, Debtor in Possession. (PCA Exhibit Nos. 7 and 8). PCA states that these checks further support its reliance on Berlin as the Trustee's agent.

■ The Bankruptcy Code itself does not speak to disputed agency relationships between trustees and their alleged agents. Turning to applicable Illinois state law on the question, it is well established that the existence and extent of an agency relationship may be established by circumstantial evidence based upon an examination of the situation of the parties, their acts, and other relevant information. *St. Ann's Home for the Aged v. Daniels,* 95 Ill.App.3d 576, 51 Ill.Dec. 64, 420 N.E.2d 478 (1st Dist.1981); *Kalman v. Bertacchi,* 57 Ill.App.3d 542, 15 Ill.Dec. 204, 373 N.E.2d 550 (1st Dist.1978). Agency is a

consensual, fiduciary relationship whereby the principal has the right to control the conduct of the agent and the agent has the power to effect the legal relations of the principal. *Stefani v. Baird & Warner, Inc.*, 157 Ill.App.3d 167, 109 Ill.Dec. 444, 510 N.E.2d 65 (1st Dist.1987); *Milwaukee Mutual Insurance Co. v. Wessels*, 114 Ill. App.3d 746, 749, 70 Ill.Dec. 550, 449 N.E.2d 897 (2nd Dist.1983). There is no short formula for determining whether a particular individual is an agent or independent contractor. *NLRB v. United Insurance Co.*, 390 U.S. 254, 258, 88 S.Ct. 988, 990, 19 L.Ed.2d 1083 (1968). The key consideration in determining whether an agency relationship exists is whether the principal had the right to control the activities of the agent. *Oberlin v. Marlin American Corp.*, 596 F.2d 1322, 1326 (7th Cir.1979); *Phipps v. Cohn*, 139 Ill.App.3d 210, 212, 93 Ill.Dec. 761, 487 N.E.2d 428 (5th Dist.1985). This critical control factor by the Trustee over The Devon Group, the Society, or Berlin, is completely lacking from the evidence adduced at trial.

▆▆▆▆ Under Illinois law, an agency relationship need not be based on express appointment or acceptance. *Lilly v. County of Cook*, 60 Ill.App.3d 573, 17 Ill.Dec. 946, 377 N.E.2d 136 (1st Dist.1978). It can be inferred from circumstantial evidence, including the situation occupied by the parties, their acts and other relevant circumstances. *Evanston v. Piotrowicz*, 20 Ill.2d 512, 518, 170 N.E.2d 569 (1960); *Milwaukee Mutual Insurance Co. v. Wessels*, 114 Ill.App.3d 746, 70 Ill.Dec. 550, 449 N.E.2d 897 (2d Dist.1983); *Szymkowski v. Szymkowski*, 104 Ill.App.3d 630, 60 Ill.Dec. 310, 432 N.E.2d 1209 (1st Dist.1982). Where the existence of an agency relationship is in issue, as in the case at bar, it may be proved by the testimony of the agent regarding the facts and surrounding circumstances that imply knowledge on the part of the supposed principal of certain acts of the agent. *Evanston v. Piotrowicz*, 20 Ill.2d at 518, 170 N.E.2d 569. There is no presumption of an agency relationship. *Louisiana Farm Supply Co. v. Carroll*, 56 Ill.App.2d 175, 205 N.E.2d 478 (4th Dist. 1965). Rather, the existence of an agency

relationship is a question of fact to be decided by the fact finder. *Mateyka v. Schroeder*, 152 Ill.App.3d 854, 862, 105 Ill. Dec. 771, 504 N.E.2d 1289 (5th Dist.1987). The party alleging such a relationship has the burden of proving same by a preponderance of the evidence. *Schmidt v. Shaver*, 196 Ill. 108, 115, 63 N.E. 655 (1902); *Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.*, 138 Ill. App.3d 574, 582, 93 Ill.Dec. 71, 485 N.E.2d 1281 (2nd Dist.1985); *Lazarus v. Pascucci*, 74 Ill.App.3d 633, 639–640, 30 Ill.Dec. 727, 393 N.E.2d 1074 (1st Dist.1979).

▆▆▆▆ The authority of an agent must find its ultimate source in some act or word of the principal, indicative of his intention either express or implied. *Hofner v. Glenn Ingram & Co.*, 140 Ill.App.3d 874, 882, 95 Ill.Dec. 90, 489 N.E.2d 311 (1st Dist.1985); *Johnston v. Suckow*, 55 Ill. App.3d 277, 280, 12 Ill.Dec. 846, 370 N.E.2d 650 (5th Dist.1977). The relationship of principal and agent ordinarily cannot be established by statements of the agent, made outside of the presence of the principal. *Kusek v. Allied Packers, Inc.*, 246 Ill.App. 209 (1927); *see also Haynes v. Holman*, 319 Ill.App. 396, 49 N.E.2d 324 (1943). The self-serving characterizations of the purported agent are irrelevant. *Wright v. United States*, 537 F.Supp. 568, 570 (N.D.Ill.1982).

▆▆▆ The Court has carefully reviewed both The Devon Group proposal and the agreement with Society, and concludes that neither expressly nor impliedly created any agency relationship between the Trustee and The Devon Group, the Trustee and the Society, or the Trustee and Berlin. The agreements established independent contractor relationships between the Trustee for the benefit of the Debtor's estate and The Devon Group and the Society respectively. Sole control over the ways and means of archiving, storage, maintenance, access and retrieval of the records resided in The Devon Group and the Society. (PCA Exhibits 1 and 5). Although the Society agreed to abide by the policies and procedures established by the Trustee in provid-

ing reference service for the medical records, (PCA Exhibit No. 5, p. 2, ¶ 6), and the Trustee was to supply all existing shelving and filing cabinets needed to house the records, (PCA Exhibit No. 5, p. 2, ¶ 8), and the microfilm reader/printer and related desks and chairs, (PCA Exhibit No. 5, p. 3, ¶ 10), those provisions did not afford the Trustee any right or privilege to control or direct the Society's action in performance of its obligations under that agreement. Berlin is nowhere referred to as an agent of the Trustee in either The Devon Group proposal or the Society's agreement and never was so authorized by any Court order.

To the contrary, Berlin made The Devon Group's proposal as its director, and thus its agent to the Trustee, (PCA Exhibit No. 1, second page), just as Mattenson executed the agreement with the Trustee on behalf of the Society as its then executive director, and consequently its agent. (PCA Exhibit No. 5, p. 3). After hearing all the testimonial evidence and reviewing all of the admitted documentary exhibits, the Court is clearly convinced that Berlin was the agent for The Devon Group, not the Trustee. Berlin was the agent of the Society because he submitted and perhaps drew the agreement with the Society which the Trustee signed and Berlin closed a real estate transaction for the Society (Trustee Exhibit No. 1). It is also clear from Mattenson's testimony, that Berlin was Mattenson's friend, although not as good a friend as Mattenson might have formerly believed, because Berlin died without having paid Mattenson anything for his services except approximately $907.50. (PCA Exhibit Nos. 7 and 8). The fact that Berlin made those payments to PCA with checks imprinted with the reference to the Debtor does not establish an agency relationship between the Trustee and Berlin. The Debtor was never a Chapter 11 debtor-in-possession as the case was filed and always has been administered under Chapter 7. Moreover, the checks were drawn on an account by Berlin at a Bank where the Trustee testified he has never had estate funds on deposit. That Mattenson may have concluded from Berlin's actions and state-

ments that he was acting as the Trustee's agent, does not establish any agency relation under the facts of the evidence adduced at trial or under the applicable law.

PCA has failed to prove by a preponderance of the evidence that Berlin was acting as an agent on behalf of the Trustee. In fact, the Trustee unequivocally testified that he never authorized Berlin to act as his agent. Furthermore, he stated that he was completely unaware of the existence of the two bank checks drawn by Berlin referencing the estate. PCA failed to adduce any evidence that the Trustee controlled the activities of Berlin with regard to the storage of the medical records. Thus, the exercise of control that is a necessary element in order to establish an agency relationship is totally absent in this case.

The self-serving testimony of Mattenson to the effect that he believed Berlin to be the agent of the Trustee does not prove the existence of same. The Court significantly notes that Mattenson and PCA waited until March 1990 to present a bill or written demand for payment, a date approximately a year and one-half after the records were transferred and moved, and over six months after Berlin died. It is incredible that a substantial claim as asserted by PCA dating back to fall 1988 would not be initially raised until March 1990. Mattenson's credibility is in serious doubt given his strong economic interest in PCA, and the fact that he asserts he had only an oral understanding with the now deceased Berlin under which PCA would be paid a greater monthly storage and maintenance charge ($754.50 per month—PCA Exhibit No. 17) for the records occupying one-third of PCA's leasehold for which it only pays its landlord a lesser sum for the entire premises ($660.00 per month—PCA Exhibit No. 12).

The only direct conflict in the testimony of Mattenson and the Trustee is that Mattenson claims that after Berlin's death, the Trustee and he discussed PCA's claims against the estate, and in substance, the Trustee avoided his oral demands for payment, which facts the Trustee flatly denies. According to the Trustee's testimony, he

never received any request for money or demand for payment from Mattenson or PCA until March, 1990. (Trustee Exhibit Nos. 10 and 11). Having carefully considered the demeanor and the testimony of both witnesses, in light of all the other evidence, the Court finds the Trustee's testimony on this point more credible than Mattenson's. Moreover, the Court credits the Trustee's further testimony that he hired The Devon Group as an independent contractor. This conclusion is supported by the Order authorizing the retention of The Devon Group which makes no reference to Berlin or The Devon Group acting as agents of the Trustee.

■■■ Additionally, the Court finds that Berlin did not possess apparent authority to act on behalf of the Trustee as his agent. The evidence shows the Trustee did not act or engage in any conduct that would have lead a reasonably prudent person to believe that Berlin was his agent. The record is devoid of any credible evidence demonstrating that Berlin was an agent of the Trustee and/or the estate. Accordingly, PCA has failed to prove by a preponderance of the evidence the existence of an agency relationship between Berlin and the Trustee, The Devon Group and the Trustee, or the Society and the Trustee.

### 3. *PCA DOES NOT HAVE AN EXPRESS OR IMPLIED CONTRACT WITH THE ESTATE*

■■■ In addition, PCA argues that it has an express contract with the Debtor's estate, or in the alternative an implied contract. The Court finds that PCA has not entered into either an express or implied contract with the estate for the storage and payment of the Debtor's medical records. In order for the Court to determine if a contract exists, the Court must find, inter alia, that the contract is definite in its terms. *Bau v. Sobut*, 50 Ill.App.3d 732, 8 Ill.Dec. 486, 365 N.E.2d 724 (1st Dist.1977). The Court is unable to make such a finding in this case. There is no express contract in evidence that PCA entered into with the Trustee. Under the facts and evidence dis-

cussed at length above, the Court will not find an implied contract with the Trustee or the estate.

■■■ The Seventh Circuit has discouraged courts from supplying missing contract terms. In *National Tea Co. v. Weiss*, 341 F.2d 331 (7th Cir.1965), the court noted: "[u]ntil the parties agree on the fundamental and material items basic to the agreement, there was no enforceable contract. . . . Under the guise of construction, the district court could not itself write a contract for the parties covering the missing essential elements." *Id.* at 334. Where an agreement is not sufficiently definite to enable a court to give it exact meaning or where an essential element is reserved for future agreement of both parties, a legal obligation cannot result. *Pearson Bros. Co. v. Pearson*, 113 B.R. 469, 475 (C.D.Ill.1990). Hence, the Court finds that neither an express or implied contract exists as all essential terms do not exist. PCA has failed to demonstrate that any type of agreement existed between it and the Trustee.

### 4. *PCA IS NOT ENTITLED TO AN ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(1)(A) UNDER IT ARGUMENTS OF UNJUST ENRICHMENT OR QUANTUM MERUIT*

■■■ PCA has failed to demonstrate that it provided an actual and necessary benefit to the estate. Furthermore, PCA failed to cite any controlling authority under the Bankruptcy Code for recovery under its theories of unjust enrichment or quantum meruit. The Court will not authorize payment of the sum claimed, as the estate has already paid to The Devon Group a large sum, namely $59,700.00, for service including the storage, maintenance and retrieval of the Debtor's medical records. PCA or Mattenson's oral agreement for payment was with Berlin, and therefore, perhaps Berlin's company, The Devon Group. Assuming, arguendo, that PCA's storage of the microfilm and records conferred some benefit upon the estate, same was not a necessary expense in light of the fact that the estate had previously

paid The Devon Group to perform those very services. The estate will not be unjustly enriched if it does not pay another $21,479.00 to PCA as claimed. On the contrary, the estate would be unjustly depleted if it was forced to pay the claimed sum for services it has already paid The Devon Group to perform and some of which the Society further agreed to do for no additional compensation from the estate.

It is inequitable for the estate to be surcharged for services for which it has previously paid. PCA's claims and bills should be presented to either The Devon Group or the Society from whom it can recover in another forum of competent jurisdiction, if it desires to collect. The Debtor's estate should not bear the burden of the dispute among Mattenson, PCA, The Devon Group and Berlin's probate estate. The Court will not allow PCA to bootstrap its unsecured claim against Berlin and perhaps The Devon Group and the Society, into an administrative priority claim against the Debtor's estate.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby denies the motion of Photographic Conservation Associates Ltd. for allowance of an administrative claim.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.